# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2463 | **DATE** | 1/15/2004 |
| **CASE TITLE** | Kevin Vodak vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion to compel production of completed questionnaires by potential class members is denied [51-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 1 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 63 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 1/15/2004 | |
| hmb | courtroom deputy's initials | '04 JAN 15 PM 3:59 | date mailed notice hmb | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN VODAK, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF CHICAGO, et. al.,.<br><br>Defendants. | DOCKETED<br>JAN 1 6 2004<br><br>No. 03 C 2463<br><br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This is a civil rights putative class action alleging "false detentions, arrests, imprisonments and injuries sustained by approximately 800 class members on March 20, 2003 in Chicago, Illinois." First Am. Cmplt., p. 2. Defendants seek to compel production of questionnaires completed by potential class members. Plaintiffs claim these documents are protected from disclosure by the attorney-client privilege. Defendants contend no attorney-client relationship existed at the time the questionnaires were completed. For the reasons explained below, the Court finds that the completed questionnaires are protected from disclosure by the attorney-client privilege.

## BACKGROUND

On March 20, 2003, thousands of persons gathered at the Federal Plaza located at Jackson Avenue and Dearborn Street in Chicago to express concern and protest the commencement of the United States war on Iraq. Over 500 persons were arrested and approximately 200-300 people were detained on March 20, 2003. Plaintiffs state that subsequent to the arrests and detentions, the National Lawyers Guild[1] and the attorneys who are representing Plaintiffs "were inundated with requests for

---

[1] The National Lawyers Guild website states that the National Lawyers Guild "is an association dedicated to the need for basic change in the structure of our political and economic system. The Guild unites lawyers, law students, and legal workers as an effective political and social force in the service

legal representation in criminal court and a myriad of other inquiries about their criminal cases, a potential civil rights lawsuit, and other legal issues relating to the police actions on March 20, 2003." Plaintiffs' Resp., p. 2. The National Lawyers Guild organized a meeting at the Chicago Temple Methodist Church for March 30, 2003. Plaintiffs state that the purpose of the meeting was to "provide legal information and legal representation if desired, to those people who were arrested or detained on March 20, 2003." Pls' Resp., p. 2. Approximately 500 persons attended the meeting.

The lawyers prepared a form questionnaire prior to the meeting. The questionnaire sought identification information such as name, telephone number, address, and email address. The questionnaire also asked the following questions: 1) Do you have a court date? If yes, what is the date, time, location, and charge. Do you want a lawyer to appear with you? 2) Were you taken into custody by the police, but released without a court date? If yes, what was the date and the number of hours held? 3) Were you prevented from leaving and/or detained out on the street by the police? If yes, what was the date and the number of hours held? 4) Identify any persons who saw what happened to you. Plaintiffs explain that only those who were seeking legal representation or specific advice were requested to complete the form questionnaire. It was announced at the meeting that persons could write on the back of the questionnaire if they had any additional information that they wanted to convey.

Answers to the questionnaire were obtained. Plaintiffs state that the completed forms were immediately utilized to provide legal representation in criminal court for the arrestees, commencing on the first court date of April 1, 2003. Plaintiffs further state that the information contained on completed questionnaires was kept confidential and provided only to lawyers who represented the

---

of the people."

individuals in court.

Plaintiffs have filed a complaint against the City of Chicago and the Chicago Police Department seeking certification of a class of protesters including those who were: 1) taken into custody but released without being charged with a crime; 2) subjected to unnecessary and/or excessive force; 3) deprived of personal property; 4) taken into custody based on associational or expressive principles; and 5) taken into custody and charged with criminal offenses. Class certification issues are being litigated and discovery is ongoing. In the course of discovery, a blank form questionnaire was produced to Defendants. Plaintiffs also produced a list of protesters who attended the March 30, 2003 meeting. Defendants now seek to compel production of the completed questionnaires returned to counsel.

## DISCUSSION

The federal rules permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A document is protected from disclosure by the attorney-client privilege when: 1) legal advice of any kind is sought 2) from a professional legal adviser in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence, 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or the legal adviser, 8) except the protection may be waived. United States v. White, 950 F.2d 426, 430 (7th Cir. 1991). A party that refuses to disclose information based on a claim of privilege bears the burden of establishing that the privilege applies. In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000).

With the exception of whether the persons who completed the questionnaire are to be regarded as clients, Defendants do not dispute that all of the requirements for the attorney-client privilege have

-3-

been established. The purpose of the meeting was to provided legal advice to protesters. The questionnaires were provided to the lawyers in their capacity as legal advisors. The questionnaires sought information related to that purpose such as the particulars of an individual's criminal court date. The communications in question were also made in confidence and under an expectation of privacy. The questionnaire promises that the information provided will be "held in strict confidence and used only by the attorneys providing legal representation." There has been no waiver of the attorney-client privilege.

Defendants argue that the completed questionnaires are discoverable because no attorney-client relationship existed. The Seventh Circuit has held that the existence of an attorney-client relationship is not dependent upon the payment of fees or upon the execution of a formal contract. Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1317 (7th Cir. 1978). Rather, "[t]he professional relationship for purposes of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" Id. at 1319 (quoting McCormick on Evidence (2d ed. 1972), § 88, p. 179).

Applying these guidelines to the facts of this case, Plaintiffs have established that the persons who completed the form questionnaires reasonably believed that they were consulting counsel in their capacity as lawyers and they completed the questionnaire for the purpose of requesting legal representation. Plaintiffs explain that at the meeting, only those who were seeking legal representation or specific advice were requested to complete the form. The form questionnaire expressly states that it should be completed if a person is "interested in either legal representation on a criminal charge or to pursue a civil lawsuit." See Bauman v. Jacobs Suchard, Inc., 136 F.R.D. 460 (holding that questionnaires returned to the EEOC by prospective claimants in an age discrimination suit were protected by a *de facto* attorney-client privilege where only those who desired to be represented were

-4-

asked to complete the questionnaire). Because an attorney-client relationship existed at the time the questionnaires were completed, they are protected from disclosure by the attorney-client privilege. See Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 342 (D. Mass. 1982) (holding customers of one of defendant's former clients reasonably regarded a court appointed Customers' Representative as their lawyer where questionnaires sent to customers prior to the filing of a civil class action were accompanied by a cover letter indicating that the Customers' Representative was acting as an attorney representing the customer's legal interests).

Defendants claim that the form questionnaire assumes that some who respond will not desire representation and thus, the questionnaire records which individuals do not want or need the services of the lawyers. Defendants cite only on the portion of the questionnaire dealing with court dates for criminal charges. That portion of the questionnaire asks: "Do you want a lawyer to appear with you? \_\_\_\_ Yes \_\_\_\_ No, I already have a lawyer or I will use the public defender." The fact that certain persons who completed the questionnaire may not have sought legal representation from plaintiffs' lawyers in connection with a criminal charge does not defeat the privilege. In addition to determining if persons required criminal representation, the questionnaire also requested information from individuals seeking civil representation, including whether they were taken into custody or detained on the street.

Defendants contend that in the "context of class actions, questionnaires filled out by witnesses and potential putative class members have not been deemed privileged and have been discoverable." Defs' Reply, p. 5. The cases cited by Defendants are easily distinguishable. In Morisky, et al. v. Public Service Electric and Gas Co., 191 F.R.D. 419, 424 (D. N.J. 2000), a putative class action, plaintiffs' attorneys failed to establish that the persons who completed the questionnaires "were clients or sought to become clients at the time the employees returned the completed questionnaires." Id. at

423. Similarly, in Hudson v. General Dynamics Corp., 186 F.R.D. 271, 276 (D. Conn. 1999), the district court held that the attorney-client privilege did not protect initial questionnaire responses by employees who later retained plaintiffs' attorney as their lawyers because the initial questionnaires were completed not for the purpose of obtaining legal advice but solely to serve as witness statements and were completed prior to the existence of or any attempt by the recipient to create any attorney client relationship.[2] In contrast, the questionnaires in the instant case were completed by persons seeking legal representation.[3]

Defendants' remaining arguments do not aid their attempt to discover the completed questionnaires. Defendants assert that Plaintiffs' counsel cannot assert the attorney-client privilege over everyone who attended a public meeting held to gather information from those who allegedly participated in a protest that took place in Chicago on March 20, 2003. Defendants misstate Plaintiffs' claim of privilege. Plaintiffs do not assert the attorney-client privilege on behalf of everyone who attend the public meeting. Rather, Plaintiffs claim that an attorney-client relationship existed upon completion of the form questionnaire. Defendants further argue that because persons who did not protest on March 20, 2003 could have attended the meeting and filled out a form, the questionnaires

---

[2] Similar to the present case, the Hudson court also found that questionnaires completed by the plaintiffs when they were clients or while attempting to become prospective clients are privileged. Hudson, 186 F.R.D. at 276. As the Hudson court explained: "In actions involving representation of multiple clients like this one, a client questionnaire is often prepared by counsel as an efficient substitute for more time consuming face-to-face interviews to provide the attorney with client information in response to focused questions fashioned by the attorney about the potential client and his or her claims." Id. at 275.

[3] The case of Dobbs v. Lamonts Apparel, Inc., 155 F.R.D. 650 (D. Alaska 1994), cited by Defendants, is not applicable because the court did not reach the issue of whether the attorney-client privilege protected the questionnaires from disclosure. The Dobbs court held that the third-party verbatim answers made in response to plaintiffs' attorneys' questionnaire were not protected from disclosure by the attorney work product privilege. Here, Plaintiffs do not claim that the completed questionnaires are protected under the work product doctrine.

are not privileged. Defendants are mistaken. The privilege issue here concerns the communications contained in the questionnaires and not the communications that occurred during the group meeting. In fact, deponents have already testified as to what was communicated to the entire group at the meeting.

Defendants point out that the meeting was held before a class action was filed. The attorney client privilege covers communications where "legal advice of any kind is sought" and is not dependent upon the initiation or contemplation of litigation. White, 950 F.2d at 430. Defendants also point out that the form questionnaire does not state that individual responding agree to be represented by the National Lawyers Guild or any other particular lawyers. The existence of an attorney-client relationship is not tied to actual employment of the lawyer. "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." Westinghouse Elec. Corp., 580 F.2d at 1319.

Finally, Defendants argue they have a "substantial need" to determine who participated in the protest but did not consider themselves detained by police and it would cause them "undue hardship" to obtain the information by other means. The "substantial need" and "undue hardship" exception set forth in Rule 26 applies to the attorney work-product privilege and not attorney-client information. Scurto v. Commonwealth Edison Co., 1999 WL 35311, *4 (N.D. Ill. Jan. 11, 1999). Thus, an assertion of attorney-client privilege may not be overcome upon a showing of substantial need and undue hardship. Defendants claim that they have a legitimate interest in discovering the "facts" disclosed in the responses to the questionnaires. "It is true that only the communications and advice given are privileged; the facts communicated are still discoverable if otherwise the proper subject of discovery." Bauman, 136 F.R.D. at 463. Plaintiffs have already provided a list of the names and

addresses of every person who signed in at the meeting. According to Plaintiffs, Defendants have ample non-privileged opportunities and avenues to discover who participated in the demonstration but did not consider themselves detained by the police. At the next status hearing, counsel shall be prepared to discuss the most appropriate and efficient avenue for Defendants to discover whatever relevant facts are contained in the completed questionnaires.

## CONCLUSION

For the reasons explained, Defendants' Motion to Compel production of completed questionnaires by potential class members is denied.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Dated: 1-15-04