# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2463 | **DATE** | 9/8/2004 |
| **CASE TITLE** | Kevin Vodak vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's second motion to compel [91-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 121 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| hmb | courtroom deputy's initials | 2004 SEP -8 PM 4:27 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN VODAK, et al., individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 03 C 2463 |
| vs. | ) ) | Judge David H. Coar |
| CITY OF CHICAGO, et. al., | ) ) | Magistrate Judge Nan R. Nolan |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Second Motion to Compel Discovery. The Court has reviewed the contested documents and grants in part and denies in part plaintiffs' motion for the following reasons.

## BACKGROUND

On March 20, 2003, thousands of persons gathered at the Federal Plaza located at Jackson Avenue and Dearborn Street in Chicago to express concern and protest the commencement of the United States war on Iraq. Over 500 persons were arrested and approximately 200-300 people were detained on that date. In this civil rights putative class action, plaintiffs allege false detentions, arrests, imprisonments and injuries sustained by approximately 800 class members on March 20, 2003. Defendants deny the plaintiffs' allegations and maintain "that the police acted entirely reasonably in response to a situation where Plaintiffs, and the putative class, embarked upon a completely unauthorized and un-permitted march through the streets of Chicago, took over Lake Shore Drive, and repeatedly disregarded and violated their own agreements with police and police orders not to march in various locations." Defs' Resp. at 11.

Request No. 27 of Plaintiffs' Demand for Production of Documents and Tangible Things sought production of any and all documents, notes, files, and reports pertaining to any information the defendants have on the Chicago Coalition Against War and Racism, the Autonomous Zone (A-Zone), the Iraq Peace Pledge, Not in My Name, Chicago-Indy Media, Andy Thayer, Chris Geovanis, and Daniel Romero. These groups, (with the exception of the Chicago Coalition Against War and Racism) and individuals (with the exception of Daniel Romero) were named by Lieutenant David Sobczyk in a Case Supplementary Report (the "Report") prepared by Detective Tony H. Jin and submitted on April 1, 2003. The Report includes Jin's summary of interviews with eight Chicago Police Department ("CPD") members "relative to the acts of civil disobedience occurring" on March 20, 2003 and "culminating in the mass arrests of 543 individuals." Report at 3.[1]

In their Supplemental Response to Plaintiffs' Request to Produce, defendants identified three files of the Chicago Police Department which "may contain documents responsive to some of plaintiffs' production requests." Defendants identified the files as Chicago Police Department Organized Crime Division, Intelligence Section, First Amendment Investigation files numbered 193-2003-01, 193-2003-2, and 193-2003-03 (the "First Amendment Files").

## DISCUSSION

Plaintiffs seek an order directing defendants to produce documents contained in the three files and directing witnesses from the CPD to answer deposition questions regarding the details of these police investigations. Defendants object to production of the First Amendment Files on the ground of relevancy and argue that these files are subject to protection from disclosure by the law

---

[1] The Report was received by counsel in discovery in the criminal cases stemming from criminal charges brought against plaintiffs and putative class members by defendants on March 20, 2003.

enforcement privilege. Defendants state that these three files contain information relating to internal police strategies and methods and the identity of undercover police officers. Defendants argue that disclosure of these files could result in substantial interference with future investigations, invade the privacy of individuals who were involved or identified in the investigations or threaten the safety of the undercover police officers. The Court addresses defendants' objections in turn.

A. Relevance

Federal Rule of Civil Procedure 26(b)(1) prescribes the scope of matters upon which a party may seek discovery. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Trial courts have broad discretion in resolving matters relating to discovery. Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002).

Plaintiffs argue that the First Amendment Files are "relevant to show that Defendants did not arrest and/or prosecute Plaintiffs and putative class members for any illegal conduct on March 20th, but rather to punish and retaliate against them for exercising their First Amendment rights and expressing their opposition to the war in Iraq." Pls' Reply at 1. Specifically, plaintiffs argue that the First Amendment Files are relevant to their claims that: 1) their rights to speak freely and assembly were harmed in violation of their First Amendment and Illinois Constitutional rights; 2) defendants have a *de facto* policy and practice of infringing on individuals exercising their First Amendment rights as alleged in plaintiffs' *Monell* count; and 3) defendants conspired and agreed amongst each other to harass, intimidate, and retaliate against plaintiffs and putative class members for expressing their First Amendment rights and political beliefs as alleged in the state law

-3-

conspiracy count. Plaintiffs also argue that information contained in the First Amendment Files may illustrate defendants' state of mind which is relevant to plaintiffs' request for punitive damages. See Marshall v. Teske, 284 F.3d 765, 772 (7th Cir. 2002) (holding plaintiff entitled to punitive damages in § 1983 false arrest case where it can be shown that a defendant officer's conduct was motivated by "evil intent or callous indifference to the plaintiff's federally protected rights."). Finally, plaintiffs contend that the defendant officers' states of mind are relevant to plaintiffs' state law claim for malicious prosecution. See Rodgers v. People's Gas, Light & Coke Co., 733 N.E.2d 835, 842 (Ill. App. 2000) (stating on a claim of malicious prosecution, "[i]t is the state of mind of one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, which is at issue.").

In response, defendants assert that the criminal investigations are irrelevant to the conduct that occurred on March 20, 2003 which provided the probable cause to make arrests at Chicago and Michigan Avenues. Defendants argue that a review of the documents reveals that the First Amendment investigations were directed solely at potential criminal behavior and not designed to interfere, harass, punish or retaliate against anyone for engaging in conduct protected by the Constitution. Defendants contend that there is nothing in the documents "that would even tend to show that Defendants have a *de facto* policy and practice of infringing on First Amendment rights." Defs' Sur-Reply at 6.

The withheld 2003 First Amendment Files are relevant to plaintiffs' First Amendment, *Monell*, conspiracy, and malicious prosecution claims and their request for punitive damages. The files pertain to organizations identified by defendants as being present on March 20, 2003. Defendants may deny that the First Amendment files are relevant, but plaintiffs are entitled to

-4-

discovery to test that denial. In finding these files relevant for purposes of discovery, the Court emphasizes that Lieutenant David Sobczyk noted in his interview with Detective Tony Jin "relative to the acts of civil disobedience" occurring on March 20, 2003 that the A-Zone, Not in Our Name, Iraqi Peace Pledge and Andy Thayer and Chris Geovanis of Chicago-Indymedia were present at the Federal Plaza on March 20, 2003 and that the A-Zone is "an affinity organization promoting radical civil disobedience." Plaintiffs are therefore entitled to any information defendants possess regarding the A-Zone which may form the basis for Lieutenant Sobczyk's opinion that it "promot[es] radical civil disobedience." Lieutenant Sobczyk stated in his affidavit dated June 25, 2004 that his opinion is based on his "personal observations of the conduct of persons representing themselves to be affiliated with the A-Zone at previous protests, including protests about the Trans-Atlantic Business Dialogue, and most importantly, during the events of March 20, 2003." Sobczyk Aff. at ¶ 27. Plaintiffs are not required to take Lieutenant Sobczyk's word for it when he claims that his opinion was not based on any information contained in the First Amendment Files. Rather, plaintiffs are entitled to information defendants possess regarding the A-Zone to test Sobczyk's credibility on cross-examination regarding his statements.

Defendants also argue that reports in the files at issue which were generated after March 20, 2003 and reports on events occurring after that date are irrelevant to plaintiffs' claims that their rights were violated on March 20, 2003. Defendants note that none of the post-March 20, 2003 reports relates to any of the events that occurred on March 20, 2003. Defendants overlook the fact that the criminal prosecutions from March 20, 2003 were not dismissed until June of 2003. Post-March 20, 2003 documents may be relevant to plaintiffs' claim that defendants acted maliciously when

prosecuting hundreds for charges of reckless conduct.[2]

B.     Law Enforcement Privilege

Defendants also object to production of the First Amendment Files on the basis of the law enforcement privilege. The purpose of the law enforcement privilege is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." Ostrowski v. Holem, 2002 WL 31956039, *2 (N.D. Ill. Jan. 21, 2002) (quoting Hernandez v. Longini, 1997 WL 754041, at *3 (N.D. Ill. Nov. 13, 1997)). The law enforcement privilege is not absolute; rather it is a qualified privilege under which the need for secrecy must be balanced against the plaintiffs' need for access to the information. Lepinka v. The Village of Franklin Park, 2004 WL 626830, at *2 (N.D. Ill. March 26, 2004).

The parties agree that in determining whether the law enforcement privilege applies, the Court must consider and weigh the following ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the

---

[2] Defendants further argue that disclosure is unwarranted because they will not rely on any information from the First Amendment Files in defending this case and will only rely on what occurred on March 20, 2003. Defendants further state that while they "may offer some evidence relating to background information about plans for the protest and the potential for illegal behavior or outright violence," this evidence will be based on personal observations of police in other contexts and information gathered from public sources such as the internet. Defs' Resp. at 12 n.6. Defendants cannot limit discovery in this manner. Plaintiffs are entitled to discover these files to determine whether an argument can be made that information collected in the investigations impacted defendants' actions on March 20, 2003 and to cross-examine Lieutenant Sobczyk regarding his claim that evidence relating to background information was not received through these investigations.

-6-

degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant to any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case. Kampien v. Individuals of Chicago Police Department, 2002 WL 238443, *4 (N.D. Ill. Feb. 19, 2002). The claim for application of the privilege is "somewhat stronger" when law enforcement is seeking to protect ongoing investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement methods and tactics as contrasted with simple interview materials, and evaluative opinions as contrasted with facts. G-69 v. Degnan, 130 F.R.D. 326, 332 (D. N.J. 1990).

In the present case, each of the above factors weigh in favor of disclosure of the First Amendment Files to the extent indicated below.

1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information

With respect to the first factor, defendants admit that the investigations "did not rely extensively on information provided by private citizens." Defs' Resp. at 7. Nevertheless, defendants assert that this factor should carry considerable weight in the Court's determination because many witnesses provide law enforcement with information to solve and prevent crimes with the

expectation that their identities will be not be released to the public. Defendants fear that disclosure of information relating to these investigations will discourage citizen participation in future law enforcement efforts. Because defendants have not specifically identified any information within these files that was gathered from a private citizen, this factor weighs heavily in favor of disclosure. This Court's review of the files reveals that no "citizen statements" are involved and the information contained in the files was substantially given or gathered by law enforcement. Defendants' fears are unfounded. Disclosure here where no citizen statements are involved and the investigations did not rely extensively on information provided by private citizens should not intimidate potential witnesses from disclosing information to law enforcement officials.

2.  The impact upon persons who have given information of having their identities disclosed

The second factor also weighs in favor of disclosure. Defendants concede that the files in question here contain no information relating to "confidential informants" or "cooperating individuals." Therefore, confidential informants' identities will not be sacrificed by disclosure of these investigation files. Defendants argue, however, that the files should not be disclosed because the identities of uncover police officers will be revealed. Defendants have a valid interest in preserving the anonymity of undercover intelligence officers. The effectiveness and safety of undercover officers may be compromised if their identities are disclosed. See Aff. of Lieutenant D. Sobczyk at ¶ 11 (stating it is "crucial to keep [the] identities [of undercover police officers] confidential so that they can be used in future investigations, if necessary, and to protect personal safety."). Moreover, plaintiffs have not articulated any specific need for the names of undercover officers. Defendants may redact the names of all undercover intelligence officers as well as any identifying information contained in the files.

Defendants further seek to protect documents in Categories A, B, & D from File No. 193-2003-01, Categories A & B from File No. 193-2003-002, and Categories A & B from File No. 193-2003-03 from disclosure because they contain documents which reveal the targets of the investigations and other persons involved or identified. Law enforcement has a legitimate interest in maintaining the confidentiality of the targets of its investigations. Plaintiffs correctly point out that the targets of police investigations may likely desire to know that they were targets, but that desire does not override defendants' interest in confidentiality. Moreover, individual persons mentioned in the investigative files have a legitimate expectation of privacy. These law enforcement and privacy concerns do not, however, justify denying discovery altogether. As discussed below, a protective order limiting disclosure of these files to plaintiffs' attorneys in this case will adequately protect these concerns.

As to Category D of File No. 193-2003-01 or Category B of File No. 193-2003-02, the Court finds that plaintiffs are not entitled to discover the documents contained therein. These documents consist of a comprehensive background report on a possible target (Category D of File No. 193-2003-01) and three license plate background reports on potential targets (Category B of File No. 193-2003-02). The CPD has a valid interest in maintaining the confidentiality of potential targets and the contents of non-public background reports on them. The documents at issue contain private information which is not necessary or relevant to plaintiffs' case. The fact that the CPD generates background reports on potential targets in First Amendment investigations is not a confidential law enforcement technique. In fact, defendants' privilege log, which was filed in the public record, indicates that these categories of documents contain background reports on possible targets of the investigations. It is sufficient that plaintiffs know that background reports were conducted in

connection with the three First Amendment investigations at issue. The actual names of the targets and the contents of the documents are not relevant here.[3]

3. The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure

The next factor also weighs in plaintiffs' favor. Defendants argue that disclosure of the First Amendment Files will reveal the CPD's techniques and methods of conducting intelligence investigations and "would only serve to compromise public safety." Defs' Resp. at 8. Defendants have not pointed to any governmental self-evaluation or consequent program improvement that will be chilled by disclosure here. Moreover, defendants' sweeping conclusion that public safety will be compromised by revelation of CPD's techniques and methods of conducting First Amendment investigations is insufficient to justify non-disclosure. Plaintiffs correctly point out that the procedures for initiating as well as the investigative techniques that may be used in First Amendment investigations by the CPD are matters of public record. See CPD's Addendum to General Order 02-10 attached to Defs' Resp. at Exhibit E. The use of undercover police officers to collect information about a group or organization engaged in First Amendment conduct is not a novel technique requiring protection from disclosure by the law enforcement privilege. See 2/19/04 Chicago Sun Times article titled "Police Infiltration of Protest Groups Has Civil Rights Activists Fuming," attached as Exh. E to Plfs' motion.

---

[3] The Court notes that neither of the individuals mentioned by Lieutenant Sobczyk in the Report (Andy Thayer and Chris Geovanis) were the subject of the comprehensive background report nor are they mentioned in the license plate background reports.

-10-

4. <u>Whether the information sought is factual data or evaluative summary</u>

The fourth factor weighs in favor of disclosure. Defendants contend that the documents contained in Category A from File No. 193-2003-001, Category A from File No. 193-2003-002 and Categories A & B from File No. 193-2003-003 are evaluative in nature and should not be disclosed. These categories contain actual reports generated in the investigation. Plaintiffs state that they are entitled to any factual data in the files, including officers' observations, collection of materials, and statements from individuals.

The entire portion of the materials in the cited categories does not consist of evaluative comments. Moreover, many facts are so intertwined within the evaluative discussions that they cannot be separated.[4] In any event, the fact that the actual reports generated in the investigations may contain evaluative material is not an absolute bar to disclosure. Such information may be highly relevant to defendants' state of mind. As the Court noted in <u>Anderson v. Marion County Sheriff's Dept.</u>, 220 F.R.D. 555, 566 (S.D. Ind. 2004):

> Typically, courts require reports containing both factual and evaluative materials to be disclosed in civil rights actions brought pursuant to 42 U.S.C. § 1983. In such cases, the evaluative materials may be the best evidence available of the state of mind of the defendant and exempting the evaluative materials from discovery "might well bar jury scrutiny of highly relevant evidence which cannot adequately be developed in any other way."

See also <u>Rodriquez</u>, 1987 WL 17466 at *2 (noting that evaluative comments may reflect the attitude of police officers which is relevant in cases alleging a pattern and practice of illegal conduct).

---

[4] Courts have recognized that as a practical matter, it is difficult to separate factual material within a report from evaluative discussions. See <u>King v. Conde</u>, 121 F.R.D. 180, 193 (E.D. N.Y. 1988) (stating "[c]ourts should not expend too much effort trying to distinguish 'factual' from 'evaluative' information . . . This distinction is likely to be elusive and often arbitrary."); <u>Rodriquez v. City of New York</u>, 1987 WL 17466, at *2 (E.D. N.Y. Sept. 22, 1987) (noting the difficulty of distinguishing between factual data and evaluative material).

-11-

Plaintiffs are asserting, among other things, that the CPD has a policy and practice of infringing on individuals exercising their First Amendment rights. Plaintiffs are entitled to the information in defendants' possession regarding the groups and individuals mentioned by Lieutenant Sobczyk in the Report to determine what impact, if any, the gathered information had on defendants' actions on March 20, 2003. Defendants' state of mind is also directly relevant to plaintiffs' malicious prosecution claim as well as their request for punitive damages.

Finally, defendants have failed to make any showing of specific harm to law enforcement efforts that would occur by disclosure of any evaluative comments to plaintiffs' counsel. In fact, knowledge that reports generated in First Amendment investigations might be disclosed to plaintiffs' civil rights lawyers may lead the CPD to maintain or improve its First Amendment investigations, not impede or compromise the investigatory process.

Defendants also contend that documents contained in Category E from File No. 192-2003-001 and Category C from File No. 193-2003-002 should be protected from disclosure. These documents were gathered in the course of the investigations and evaluated by law enforcement officers. Quoting Doe v. Hudgins, 175 F.R.D. 511, 514 (N.D. Ill. 1997), defendants note that "[t]he common law has generally recognized . . . a privilege protecting information gathered in the course of an enforcement investigation." Defs' Resp. at 9. The Court rejects the suggestion that the law enforcement privilege creates a blanket exemption from disclosure for all materials gathered in a law enforcement investigation without an analysis of the specific types of information gathered in each case and a specific showing of harm from disclosure. The categories highlighted by defendants here consist of pamphlets, newsletters, a series of internet postings, an advertisement, and essays which were distributed at public events that were the subject of the investigations. Defendants do not

contend in their Amended Privilege Log that disclosure of materials distributed at public events that were the subject of investigations will reveal confidential law enforcement techniques, procedures, and methods of evaluation. Moreover, defendants fail to make any showing of specific harm from disclosure of documents gathered at a public event and that exist in the public domain.

5. The remaining factors

The fifth factor weighs in favor of disclosure. Plaintiffs and putative class members are not defendants in any actual or pending criminal proceeding either pending or reasonably likely to follow from the incident in question. The sixth factor also favors disclosure as defendants acknowledge that all three First Amendment investigations have been completed. Defendants contend that disclosure of these completed investigations will seriously impair future investigations if CPD's methods and procedures and the identity of undercover officers are revealed. Defendants' contention is unpersuasive given that novel and confidential investigative techniques are not at issue here and the identity of undercover officers will not be revealed. There is also no evidence that any intradepartmental disciplinary proceedings have arisen or may arise from the First Amendment investigations. As to the eighth and ninth factors, defendants do not contend that plaintiffs' lawsuit is frivolous and brought in bad faith or that the information sought is available through other discovery or from other sources. Finally, as discussed above, plaintiffs have demonstrated a sufficient need for the withheld information.

6. The Modified Consent Decree

Defendants point out that the investigations were conducted pursuant to the Modified Consent Decree entered in Case Nos. 74 C 3268 and 75 C 3295 and this fact favors non-disclosure. The Modified Consent Decree contemplates confidentiality of certain information but does not prevent disclosure under the circumstances presented here. The Modified Consent Decree bars auditors from access to "information specifically identifying confidential information" or "to current criminal investigations that the Superintendent of Police states might be compromised by disclosure to the auditors." Modified Consent Decree at ¶ 5. The Modified Consent Decree also provides that the Chicago Police Board cannot disclose "in any manner details that specifically identify any investigations except as otherwise permitted by law, nor shall it disclose in any manner information that would reveal the identify of a confidential informant, compromise an ongoing criminal, regulatory, or employee disciplinary investigation, or constitute an invasion of a person's privacy." Id. These terms do not prevent disclosure of relevant investigative material in a civil case. Moreover, the Modified Consent Decree's concerns about revealing the identities of confidential informants and compromising or interfering with ongoing investigations are not implicated here.[5]

C. Protective Order

The Court finds that good cause exists to enter a protective order limiting the disclosure of the First Amendment Files to plaintiffs' counsel in this case. Lieutenant David Sobczyk states in his affidavit that as the supervisor responsible for these investigations, he anticipated that they would

---

[5] Defendants' claim that plaintiffs' motion is "actually a thinly-veiled attempt to attack the propriety of the First Amendment Investigations pursuant to the Modified Consent Decree" is unavailing. Defs' Sur-Reply at 2. Plaintiffs are not seeking to enforce or punish any violation of any provision of the Modified Consent Decree. Plaintiffs only sought the withheld information in response to statements made by Lieutenant Sobczyk in the post-arrest police report.

"remain confidential pursuant to the Modified Consent Decree, and that [] information gathered would not be disclosed except as necessary to comply with the audit procedures." Sobczyk Aff. at ¶ 9. CPD's General Order 02-10 which incorporates the Modified Consent Decree into the CPD's operating policies and procedures requires all closed First Amendment investigation files be forwarded to the General Counsel to the Superintendent in a sealed file. See General Order 02-10, Addendum 1A, VI.B.7. Sobczyk's expectation of confidentiality from public disclosure is not unreasonable given the limitations on disclosure contemplated by the Modified Consent Decree and General Order 02-10. A protective order limiting the disclosure of the First Amendment Files to plaintiffs' counsel will adequately address the CPD's legitimate expectation of privacy in its investigatory files and its valid concern that disclosure of these investigation files will reveal to the public where Unit 193 has been focusing its investigative efforts which may compromise its ability to conduct future investigations. Also, a protective order preventing the public disclosure of names of the persons involved or identified in the files will adequately protect the privacy of these private individuals.

## CONCLUSION

For the reasons explained above, plaintiffs' second motion to compel is granted in part and denied in part.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Dated: 9/8/04