UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN VODAK, et al., individually and on behalf of others similarly situated )
)
)
Plaintiffs, )
v. )
)
CITY OF CHICAGO, et al., )
)
Defendants. )
_____ )
)
CITY OF CHICAGO, )
)
Counter-Plaintiff, )
v. )
)
KEVIN VODAK, et al., individually and on behalf of others similarly situated, )
)
Counter-Defendants. )

Case No. 03 C 2463

Judge Virginia M. Kendall

**MEMORANDUM OPINION AND ORDER**

Eleven plaintiffs ("Plaintiffs") brought this class action against the City of Chicago ("the City"), the Chicago Police Department ("the CPD"), and various Command Personnel and officers of the CPD (collectively, "Defendants"). On April 17, 2006, this Court certified a class consisting of all persons who were surrounded by Defendants on March 20, 2003 on Chicago Avenue, just east of Michigan Avenue and west of Mies Van Der Rohe Way ("the bounded area"), between approximately 8:30 p.m. and 11:30 p.m. On May 16, 2006, Defendant City of Chicago filed a counterclaim against Plaintiffs and the class they represent ("the Counterclaim"). The City's counterclaim relies on § 8-28-020 of the Municipal Code of the City of Chicago ("the Ordinance"):

> Any person who causes the city or its agents to incur costs in order to provide necessary services as a result of such person's violation of

> any federal, state or local law . . . shall be liable to the city for those
> costs. This liability shall be collectible in the same manner as any
> other personal liability.

Taking as true all facts alleged in the counterclaim and construing all reasonable inferences in favor of Counter-Plaintiff, § 8-28-020, as applied, does not violate the First Amendment and Counter-Plaintiff has stated a claim for relief under Rule 12(b)(6). Further, no novel issue of state law or exceptional circumstance convinces this Court to decline to exercise supplemental jurisdiction over the Counterclaim. Finally, under the Federal Rules and this Court's order the counterclaim is not untimely. Accordingly, Counter-Defendants' Motion to Dismiss is denied.

### Counter-Plaintiff's Allegations

Counter-Defendants participated in a march that began in Federal Plaza in downtown Chicago. (Defendant City of Chicago's Amended Counterclaim ("Countercl."), ¶¶ 6-7.) The march continued until Counter-Defendants eventually were surrounded by members of the CPD. (Countercl. ¶ 11.) Many of the Counter-Defendants then were arrested. (*Id.*) Counter-Defendants allegedly violated numerous state and local laws during their march through the City of Chicago. (Countercl. ¶ 14.) Among other violations, Counter-Defendants failed to obtained a permit for their march; hindered, obstructed or delayed traffic on the streets of Chicago; and crossed roadways at points other than those within marked crosswalks. (*Id.*) As a result of Counter-Defendants' conduct, the City of Chicago incurred extensive costs to provide necessary services, including the extra police forces that were called in to monitor and control the march and traffic that was disrupted by the march, and costs related to transporting, processing and housing Counter-Defendants who were arrested. (Countercl. ¶ 12.)

### DISCUSSION

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged

in the counterclaim and construe all reasonable inferences in favor of the counter-plaintiff. *Cozzi Iron and Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**First Amendment Challenges**

Section 8-28-020 creates liability for persons that violate a federal, state or local law. Even if ostensibly engaging in First Amendment activity, "[i]ndividuals who actually engage in illegal acts and individuals who conspire to violate the law can be held liable for their actions." *U.S. v. Wilson*, 154 F.3d 658, 666 (7th Cir. 1998). Thus, nothing on the Ordinance's face nor in the allegations in the City's counterclaim demonstrate that the Ordinance punishes First Amendment protected activity. To the extent that Counter-Defendants properly were exercising their First Amendment rights by engaging in peaceful protests and had no intent to violate the law, such facts contradict the allegations and cannot be considered under Rule 12(b)(6). *See Cozzi Iron and Metal*, 250 F.3d at 574; *Fried Trading Co. v. Austern*, 1987 WL 4773, *1 (N.D. Ill. 1987) ("[T]he court must accept as true the well-pleaded facts of the counterclaim").

Counter-Defendants argue further that the imposition of the requirement that marchers seek a permit for a spontaneous event is an impermissible restraint on free speech, the spontaneous event being the commencement of the War in Iraq. The City's permitting ordinance contains a specific subsection addressing situations where the normal deadlines cannot be met. Section 10-8-330(c) provides that "[t]he executive director shall . . . consider an application for a parade which is filed less than 15 business days before the proposed event, where the purpose of the event is a spontaneous response to a current event, or where other good and compelling causes are shown."

3

As an initial matter, a government constitutionally may impose a reasonable permit requirement on those wishing to hold a march, parade or rally. *See Forsythe County v. The Nationalist Movement*, 505 U.S. 123, 130 (1992), citing *Cox v. New Hampshire*, 312 U.S. 569, 574-76 (1941). Second, on its face, the permitting ordinance does not give the executive director "unfettered discretion" to issue or deny a permit. The permitting ordinance sets forth in substantial detail the requirements for a permit and § 10-8-330(h) provides that the executive director "shall" issue a permit if certain conditions are met. Last, whether Counter-Defendants had time to apply for a permit or whether the City effectively waived the permit requirement by its conduct – that is, ratified Counter-Defendants' behavior, are questions of fact.

**Failure to State a Claim**

Federal notice pleading requires a short and plain statement of a claim. Fed. R. Civ. P. 8(a); *see Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("One pleads a 'claim for relief' by briefly describing the events"). The statement need not allege all of the facts involved in the claim and can plead conclusions. *See Sanjuan*, 40 F.3d at 251 (stating that "[m]atching facts against legal elements comes later"). Any conclusions pleaded, however, must "provide the defendant with at least minimal notice of the claim," *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998), "includ[ing] the operative facts upon which plaintiff bases his claim." *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

Counter-Plaintiff alleges that each member of the certified class participated in the march, which state and local laws the class members allegedly violated during the march and examples of the services necessary to respond to the alleged violations. These allegations put Counter-Defendants on notice of the factual basis for the Counterclaim and, taking as true all facts alleged in the Counterclaim and construing all reasonable inferences in favor of Counter-Plaintiff, it cannot

4

be said that the Counter-Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Accordingly, the allegations state a claim under Rule 12(b)(6).

Additionally, absent further evidence or argument, the Ordinance does not require that an individual be convicted of a violation before a claim made be brought against him under the Ordinance. While a conviction would go a long way in helping the City meet its burden of proving a violation, the plain language of the Ordinance only requires that the person violated the statute. Assuming this reading gives the City "two bites at the apple," Counter-Defendants have offered no law or reason explaining why this is impermissible. Indeed, the principal that an individual can be liable both criminally and civilly for the same conduct is a well-established one. *See United States v. Dixon*, 509 U.S. 688, 704 (1993). As such, the lack of an allegation that class members were convicted of violating the law is not a ground for dismissing the Counterclaim.

**Supplemental Jurisdiction**

This Court has discretion to decline jurisdiction over a claim if either "the claim raises a novel or complex issue of State law" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1); (4).

Counter-Defendants argue that the Counterclaim forces this Court to apply § 8-28-020 in the context of a street demonstration – a novel and complex issue of state law. Admittedly, there is little Illinois case law on § 8-28-020, only two published cases. However, the elements of the Ordinance are straightforward – a violation, an injury and causation. In fact, the novel issues of law that are likely to arise will involve the interplay between the Ordinance and the First Amendment, issues that this Court will be as able as a state court to determine.

A counterclaim in a class action is the equivalent of a defendant class action. *See Channell v. Citicorp Nat'l Srvcs., Inc.*, 89 F.3d 379, 387 (7th Cir. 1996). Defendant class actions for damages

are exceptional. *Id.* Whether such a claim should proceed under Rule 23 will be a difficult question to answer. However, given that Counter-Defendants admit that the Counterclaim is compulsory, this Court should be the one to answer it. Therefore, this Court will not decline to exercise supplemental jurisdiction over the Counterclaim.

**Timeliness**

Federal Rule of Civil Procedure 13(a) does not require, as Counter-Defendants contend, that a compulsory counterclaim be filed at the time a defendant file its answer or it is waived. Rule 13(a) instead requires that the compulsory counterclaim be brought in the original lawsuit or it is barred. *See Burlington Northern R.Co. v. Strong*, 907 F.2d 707, 710 (7th Cir. 1990). Judge Coar previously granted the City "leave to file an amended Counterclaim . . . within 30 days of this Court's ruling on the Plaintiffs' motion for class certification." Since the City filed within those 30 days, this Court will consider its amended counterclaim timely.

**Conclusion and Order**

Wherefore, Counter-Defendants' Motion to Dismiss is denied. The parties should continue to appear before Magistrate Judge Nolan regarding all discovery matters and the setting or extension of any discovery schedule.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 30, 2006

6