# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEVIN VODAK, et al., individually and on behalf of others similarly situated, ) ) ) | |
| Plaintiffs, ) | No. 03 C 2463 |
| ) | |
| vs. ) | Judge Virginia M. Kendall |
| ) | |
| CITY OF CHICAGO, et. al., ) | Magistrate Judge Nan R. Nolan |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants seek to take a videotaped deposition of Aaron Patterson, a former Illinois Death Row inmate who is currently incarcerated in the Metropolitan Correctional Center ("MCC") awaiting sentencing on convictions of federal criminal charges unrelated to this civil rights class action. Plaintiffs seek a protective order barring Mr. Patterson's deposition. Defendants' motion has been fully briefed twice, and the Court has considered the arguments and authorities presented by both sides in the current and prior briefs. For the reasons stated, Defendants' motion [285-1] is denied, and Plaintiffs' motion [293-2] is granted.

I.   **Background**

On March 20, 2003, thousands of persons gathered at the Federal Plaza located at Dearborn Street between Adams and Jackson Streets in Chicago to express concern and protest the commencement of the United States war on Iraq. After the rally at Federal Plaza, individuals participated in a march that traveled east to Lake Shore Drive. At Lake Shore Drive, individuals marched north and proceeded west on Oak Street, and subsequently south to Chicago Avenue. At Chicago and Michigan Avenues, over 500

persons were arrested and approximately 200-300 people were detained. In this civil rights class action, Paintiffs allege false detentions, arrests, imprisonments and injuries sustained by approximately 800 class members on March 20, 2003. Defendants deny that Plaintiffs' civil rights were violated. Defendants maintain that Plaintiffs engaged in an illegal march. Defendants have asserted numerous affirmative defenses and a counterclaim alleging Plaintiffs violated numerous state statutes and municipal ordinances resulting in costs to the City to respond to the illegal conduct.

Aaron Patterson, the proposed deponent, spent 17 years on Death Row in Illinois when on January 10, 2003 then Governor George Ryan granted Mr. Patterson's request for a pardon. On March 20, 2003, Mr. Patterson spoke at the rally at Federal Plaza prior to the march.[1] Mr. Patterson is not a named Plaintiff and is not a member of the class. Mr. Patterson was not present for the majority of the march. He did not march on Lake Shore Drive. Nor was he present at Oak, Chicago, or Michigan Avenues on March 20, 2003. Mr. Patterson was not detained or arrested on March 20, 2003 nor did he witness anyone's detention or arrest on that date.

Mr. Patterson is currently confined in the MCC awaiting sentencing on convictions for gun and drug charges in USA v. Aaron Patterson, Case No. 04 CR 705. His sentencing is currently scheduled for January 5, 2007. Mr. Patterson's behavior during the course of the criminal litigation and trial has been described in both major Chicago newspapers, and the Court will not repeat it in detail here. In essence, Plaintiffs fairly state that Mr. Patterson "repeatedly disrupted the proceedings, demonstrated unwillingness to obey the rules of the

---

[1] A videotape of Mr. Patterson's speech seems to exist, but neither side provided a copy of it to the Court.

court, and actively undermined the assistance of his appointed counsel in his representation." Pls' Cross Motion at 2.

Mr. Patterson is also a plaintiff in an unrelated civil rights action against the City of Chicago, as well as various Chicago police detectives including former Commander Jon Burge for the torture, wrongful conviction, and wrongful death sentence he endured. Defense counsel in this case are the defense counsel representing Burge and the other individual defendants in Mr. Patterson's civil case. Plaintiffs' counsel here previously represented Mr. Patterson in his civil case. Mr. Patterson was deposed in his civil case. Plaintiffs' counsel states that due to the security concerns expressed by both the U.S. Marshals and the correctional officials at the MCC, Mr. Patterson could only be deposed in the MCC visiting room. Plaintiffs further say that Mr. Patterson's deposition in his own civil lawsuit entailed more than five visits to the MCC and required protracted litigation due to his refusal to answer defense counsel's questions and produce documents defense counsel claimed were necessary.

## II. Applicable Legal Standard

Some confusion exists regarding the applicable standard of review. Plaintiffs contend that Federal Rule of Civil Procedure 45 provides the applicable standard because Mr. Patterson is not a party in this litigation. Under Rule 45(c), the burden rests with the party seeking the discovery to justify its need when an objection arises. Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 931 (7th Cir. 2004). Further, under Rule 45(c), a court must quash a subpoena when the benefit of production is outweighed by the burden of compliance. Id. at 927; Fed. R. Civ. P. 45(c)(3)(A)(iv). Defendants argue that Plaintiffs have not established "good cause" and/or "exceptional circumstances" for barring

Mr. Patterson's deposition. Rule 26(c) authorizes a court "for good cause shown" to issue a protective order barring discovery "when justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Further, "[a] showing of 'exceptional circumstances' has been required for a court to prohibit completely the taking of a deposition." Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D. Ind. 1994).

Confusion about the applicable legal standard does not matter because the Court would find that Mr. Patterson's deposition should be barred whichever standard applies. Because Mr. Patterson is incarcerated, the Court believes Defendants' motion is governed by Federal Rule of Civil Procedure 30(a)(2). Rule 30(a)(2) provides that "if the person to be examined is confined in prison," "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)." Under Rule 26(b)(2), a court can limit discovery if the discovery sought is unreasonably cumulative or duplicative, there have been amply opportunities to discover the information, or any likely benefit is outweighed by the burden or expense of the proposed discovery. Fed. R. Civ. P. 26(b)(2). Finally, magistrate judges are granted broad discretion in addressing and resolving discovery disputes. Weeks v. Samsung Heavey Indus., Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997).

## III. Discussion

Defendants insist that they have an absolute right to take Mr. Patterson's deposition. They claim Mr. Patterson "is a necessary witness in the case because, among other things, he was the last speaker on March 20, 2003 at the protest at Federal Plaza before the protesters embarked on their unpermitted march through the streets of downtown, which

is the basis of this lawsuit. Evidence in this case also suggests that Mr. Patterson initiated the instruction of the protesters to being their unpermitted march." Defs' Motion at 1-2. Defendants say they wish to question Mr. Patterson at a deposition regarding the following topics: "(1) his conversations with organizers about the permit issue; (2) his knowledge with respect to the organizers' disregard to secure lawful permits; (3) the role organizers expected him to play as the keynote speaker and which organizer he spoke to (given that all of them deny any involvement of Patterson in pre-event meetings); (4) his knowledge of the role that other organizers were to play in the march; (5) his knowledge of any prior plans deliberately to shut down the streets of Chicago and wreak havoc during rush hour traffic; (6) his knowledge of any prior plans to foil the Chicago Police Department's effort to maintain peace and order; (7) his knowledge of any prior plans by protesters to deliberately get arrested; (8) his knowledge of any prior plans by organizers and others to engage in conduct that would catch the police (as Andy Thayer stated) 'flat-footed" which would result in the City expending additional resources to gain control of public streets; and (9) whether he was in fact responsible (as class members and the media have stated) for 'encouraging' thousands of people to embark on a march that shutdown the streets of downtown Chicago which culminated with the arrests of hundreds of people." Defs' Reply at 5. Defendants seek to take a videotaped deposition because they plan to call Mr. Patterson as a witness at trial and he will likely be unavailable for trial under Rule 32(a)(3). Defendants conclude that the Court should "error on the side of full discovery in this instance because it is clear that Patterson possesses relevant knowledge relating to the subject matter in this case." Defs' Reply at 7.

Plaintiffs contend that Mr. Patterson's deposition is unduly burdensome given his immateriality to these proceedings, the necessary security precautions required for his deposition to proceed at the MCC, and the time and expense wasted by conducting an extremely restrictive deposition. Mr. Patterson submitted an affidavit stating that he was present for the rally and the beginning of the march, but that he played no role in organizing the rally or march. He also states he did not witness the majority of the march or the detentions and arrests at Chicago and Michigan Avenues. Mr. Patterson was also not arrested or detained on March 20, 2003. Plaintiffs further point out that Mr. Patterson is not a named Plaintiff in this case, he is not a member of the class, he was not at the scene of the arrests and detentions at issue, he is not a counter- defendant in the City's amended counterclaim, and Plaintiffs will not call Mr. Patterson as a witness to testify at trial.

Given the broad scope of relevance under Rule 26(b)(1), the Court cannot say that Mr. Patterson's proposed testimony is not "relevant to the claim or defense of any party." See Fed. R. Civ. P. 26(b)(1) (permitting a party to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."). The real question is whether the burden of the proposed deposition outweighs the likely benefit of the testimony. On the current record, the Court finds that several of the limitations listed in Rule 26(b)(2) apply and justify barring Mr. Patterson's deposition. For these same reasons, the Court finds that Plaintiffs have demonstrated good cause and exceptional circumstances justifying prohibiting the deposition.

First, Mr. Patterson's proposed testimony would be "unreasonably cumulative." See Fed. R. Civ. P. 26(b)(2)(i). Defendants have made no showing that the information

they hope to gain from Mr. Patterson is solely in his possession and cannot be gained from existing documentary evidence and other witnesses. Extensive discovery has been completed in this more than three-year-old class action. The parties have taken close to 100 depositions in this case, including witnesses, police officers, and members of the chain of command in the Chicago Police Department. Defendants have deposed 12 individuals who were present at the planning sessions for the demonstration or who played key roles in the march (Andy Thayer, Eric Peters, Anna Marie Blackshire, Dorothy Pagosa, Matthew Gaines, Daniel Romero, Chris Geovanis, Angela Garcia, Philana Fisher, Grant Neuburger, Sherry Wolf, and Anthony Nicotera). Given Mr. Patterson's minimal participation in the events on March 20, 2003 and the extensive discovery conducted to date, the Court is satisfied that any testimony he has to offer as to the rally or the initial part of the march is entirely cumulative of existing documentary evidence or the testimony of other witnesses, police officers, and members of the CPD chain of command who have been deposed or can be interviewed.

The burden or expense of Mr. Patterson's proposed testimony also outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(2)(iii). Defendants claim that Mr. Patterson is "key" to their case but fail to present any evidence justifying this claim. The uncontroverted evidence presented by Plaintiffs confirms Mr. Patterson's limited participation in the material events. The March 20th rally at the Federal Plaza where Mr. Patterson spoke occurred more than a mile away from the arrests and detentions and at least two hours before the alleged unlawful police conduct. No evidence has been presented indicating that Mr. Patterson had any role in the March 20th demonstration other than to speak at the rally. Plaintiffs state, and Defendants do not dispute, that not a single police report

indicates that Mr. Patterson was a participant in the rally or a partial participant in the march. Even if Mr. Patterson's speech at Federal Plaza "encouraged" participants to engage in the unpermitted march as Defendants suggest, the fact that there was no permit is undisputed and no evidence has been presented that Mr. Patterson invented or introduced the idea that individuals at the Federal Plaza should march. The evidence produced by Plaintiffs shows that a march was planned and announced prior to the rally on March 20th. Defendants have not explained what Mr. Patterson's limited participation at the rally has to do with whether Plaintiffs and class members were falsely detained, arrested, imprisoned and maliciously prosecuted on March 20, 2003. Defendants have also not detailed what specific, non-cumulative knowledge Mr. Patterson may possess which is relevant to Defendants' Affirmative Defenses and Amended Counterclaim.

Plaintiffs further state that there are no witnesses or police documents that exist which even remotely suggest Mr. Patterson played any role in planning or helping to prepare for this demonstration. Plaintiffs point out that the 12 individuals who were present at the planning sessions for the demonstration or who played key roles in the march have all consistently testified that Mr. Patterson was not present at these meetings nor was he involved in any planning for this rally and march. Plaintiff explain that Mr. Thayer, who has been identified by members of the march, the media, and by CPD Command Personnel (including Commanders Risely and Griffin) as the primary leader of the rally and march on March 20th, has been deposed and has specifically identified who served in leadership capacities on March 20th. Mr. Thayer did not identify Mr. Patterson as having played any role in organizing the events on March 20th.

Defendants try to create ambiguity in Mr. Patterson's affidavit regarding his pre-rally role that isn't there. Defendants do not dispute that all of the organizers who have been deposed have stated that Mr. Patterson was not present at the pre-march meetings nor was he involved in any planning for the rally and march. Defendants point out that Mr. Patterson's affidavit states that he was "invited" to speak at the rally. Defendants then speculate that organizers have not been forthright or there was additional planning and pre-event discussions which have not been exposed in the depositions taken thus far. The Court finds nothing inconsistent with the organizers' testimony that Mr. Patterson was not present at pre-planning meetings nor involved in planning the rally and march and Mr. Patterson's statement that he was invited to speak at the anti-war rally.

Plaintiffs state that if Defendants wanted to know who invited Mr. Patterson to speak at the rally and what was said in that conversation, they should have asked the twelve organizers who were deposed. Plaintiffs' counsel represent that Mr. Thayer, the primary organizer of the rally and march and the master of ceremonies at the rally, invited Mr. Patterson to speak at the rally and they solely discussed the content of Mr. Patterson's speech. Defense counsel apparently asked Mr. Thayer only one question regarding Mr. Patterson at his deposition, and none of the current topics raised by defense counsel that they want to explore with Mr. Patterson were raised in Mr. Thayer's deposition.

Finally, Defendants' assertion that the burden of taking Mr. Patterson's deposition in this case is a "mere inconvenience," ignores the practical realities of the situation. Defendants are obviously not responsible for Mr. Patterson's current confinement and recent unpredictable behavior in his federal criminal proceedings, but the additional security measures necessary to proceed with Mr. Patterson's deposition at this time cannot

be ignored. The marginal relevance of Mr. Patterson's proposed testimony is substantially outweighed by the amount of time and effort all persons who would have to be involved (civil and criminal attorneys and MCC staff) would expend in order to arrange and facilitate a deposition.

## IV. Conclusion

Because the Court is not persuaded that Mr. Patterson has any non-cumulative, more than marginally relevant information pertaining to the claims or defenses here, the probative value of such testimony would be substantially outweighed by the burden imposed by the deposition. The Court therefore exercises its discretion under Rule 26(b)(2) to bar the deposition of Aaron Patterson.

**ENTER:**

*[signature]*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: November 9, 2006**