UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN VODAK, et al., individually and on behalf of others similarly situated ) ) ) | |
| Plaintiffs, ) | Case No. 03 C 2463 |
| v. ) ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO, et al., ) ) | |
| Defendants. ) ) ) | |

# MEMORANDUM OPINION AND ORDER

This action arises out of a march in protest of the war in Iraq that took place in downtown Chicago, Illinois on March 20, 2003. Eleven plaintiffs ("Plaintiffs") brought this class action against the City of Chicago ("the City"), the Chicago Police Department (the "CPD"), and various Command Personnel and officers of the CPD (collectively, "Defendants"). On April 17, 2006, this Court certified a class consisting of all persons who were surrounded by Defendants on March 20, 2003 on Chicago Avenue, just east of Michigan Avenue and west of Mies Van Der Rohe Way (the "Bounded Area"), between approximately 8:30 p.m. and 11:30 p.m. On May 16, 2006, Defendant City of Chicago filed a counterclaim against Plaintiffs and the class they represent (the "Counterclaim"). The City's counterclaim relies on § 8-28-020 of the Municipal Code of the City of Chicago (the "Ordinance"):

> Any person who causes the city or its agents to incur costs in order
> to provide necessary services as a result of such person's violation of
> any federal, state or local law . . . shall be liable to the city for those
> costs. This liability shall be collectible in the same manner as any
> other personal liability.

On August 30, 2006, this Court denied Plaintiffs' Motion to Dismiss the City's counterclaim.

Now before the Court is the City's Motion for Class Certification of its Counterclaim Against Class Plaintiffs/Counter-Defendants. Because, with respect to the proposed class of Counter-Defendants, the requirements of commonality and predominance are not satisfied in this case, the Motion for Class Certification is Denied.

## Counter-Plaintiff's Allegations

Counter-Defendants participated in a march that began in Federal Plaza in downtown Chicago. (Defendant City of Chicago's Amended Counterclaim (the "Counterclaim"), ¶¶ 6-7.) The march continued until Counter-Defendants eventually were surrounded by members of the CPD. (Counterclaim ¶ 11.) Many of the Counter-Defendants then were arrested. (*Id.*) Counter-Defendants allegedly violated numerous state and local laws during their march through the City of Chicago. (Counterclaim ¶ 14.) Among other violations, Counter-Defendants failed to obtained a permit for their march; hindered, obstructed or delayed traffic on the streets of Chicago; and crossed roadways at points other than those within marked crosswalks. (*Id.*) As a result of Counter-Defendants' conduct, the City of Chicago incurred extensive costs to provide necessary services, including the extra police forces that were called in to monitor and control the march and traffic that was disrupted by the march, and costs related to transporting, processing and housing Counter-Defendants who were arrested. (Counterclaim ¶ 12.)

## DISCUSSION

### I. Requirements for Class Certification under Rule 23

Without citing any authority in support of its position, the City argues that, because the only people subject to the City's counterclaim have already been certified by this Court as having satisfied Rule 23 requirements, it would be "a redundant and unnecessary exercise" to "re-examine

those class Plaintiffs for certification as class Counter-Defendants." (Mem. in Support of Mtn. for Class Cert. at p. 6). Not true; certifying a class of Counter-Defendants for the purpose of adjudicating the City's counterclaims is not at all the same as certifying a Plaintiffs' class for the purpose of adjudicating common claims against the City – even if exactly the same individuals comprise both classes. Accordingly, the Court is not excused from its obligation to conduct a rigorous analysis to determine whether the requirements for certification in Rule 23 are met simply because the proposed class of Counter-Defendants is composed of the same individuals that comprise the Plaintiffs' class. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 160-61, 102 S.Ct. 2364 (1982); *Davis v. Hutchins*, 321 F.3d 641, 647 (7th Cir. 2003). In conducting this rigorous analysis, the Court must "make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

Plaintiffs' claims may proceed as a class action only if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Assuming Plaintiffs can meet this initial burden, they also must show that the requirements for one of the subsections of Rule 23(b) is met. Plaintiffs have moved to certify their class under Rule 23(b)(3), which permits class certification if: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. This Court has "broad discretion" to determine whether class certification is appropriate. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997), citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). In this case, the

3

Court finds that, with respect to the putative class of Counter-Defendants the City has not even cleared the low hurdle of commonality. And even if there were common questions of law or fact applicable to the City's counterclaim against Plaintiffs, individual issues of fact and law would certainly predominate over the common issues.

## II. The Requirements of Commonality and Predominance Are Not Satisfied in this Case.

When deciding whether to certify a class, the Court must determine that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). In the more traditional setting of a plaintiffs' class, such a common nucleus of operative facts can arise when each class member's claim will depend on the same conduct by the defendants. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993) (commonality requirement met when there is "standardized conduct by defendants toward members of the putative class"). Once a common nucleus of facts is identified, commonality will not be upset by "factual variations among class members' grievances." *Id.*, citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980). But in this case, the City seeks to certify a class of defendants to its counterclaim. Accordingly, the Court's inquiry into whether there exists a nucleus of facts common to the putative class will necessarily reach the question whether the City's counterclaim depends upon standardized conduct *by* – as opposed to toward – the members of the putative class.

As compared to commonality, "the predominance criterion is far more demanding." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). Predominance requires not only that common questions of law or fact exist, but that they "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This inquiry begins with an examination of the

substantive elements of the class claims (or, in this case, the claims *against the class*) and the defenses raised. *See Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981). As to each claim or defense, the Court must examine rigorously the proof required to substantiate the allegations and the form the proof will take at trial. *Id.*

There is no precise test for predominance. On the one hand, the existence of individual issues does not necessarily defeat class certification. *Id.* Indeed, it is implicit in the predominance requirement as set forth in Rule 23(b)(3) that a certain number of individual issues may be present in a class action. On the other hand, a class action will not serve its intended purpose if it degenerates into separate trials on almost all elements of the claims against the class. *Id.* With that purpose in mind, the Court exercises its sound discretion to determine whether issues common to the class predominate over issues individual to each class member. *See Retired Chicago Police*, 7 F.3d at 596.

In this case, under the Ordinance, the City seeks to recover expenses for resources utilized as a result of Plaintiffs' violations of the law. The City's counterclaim alleges that Plaintiffs (both named class representatives and unnamed class members) committed violations of a number of state and local laws, including marching without a permit, disorderly conduct, obstruction of traffic, nuisance, reckless conduct and obstruction of roadways. (Mem. in Support of Mtn. for Class Cert. at p. 2). To certify a class of defendants to that counterclaim, the City must demonstrate, with respect to the elements of its claim under the Ordinance (violation, injury, and causation) that a common nucleus of facts will control the outcome.

The Court finds that the City cannot point to standardized unlawful conduct by the class members that would justify certification of a class in this case. Indeed, Plaintiffs/Counter-Defendants engaged in a wide variety of conduct: some organized the march; some participated in

5

the march from its inception; some joined the march before marchers were turned around at Michigan Avenue; some joined after; and some were merely bystanders who were never a part of the march. Some individuals sat in the street and others stood on the sidewalk. Some were aware that the group did not have a permit to march and some were not.

Under these facts, the alleged violations of law are not attributable to the group as a class. Some plaintiffs may not have committed any of the violations alleged by the City.[1] For example, bystanders cannot be guilty of marching without a permit. Persons who only walked on the sidewalk could not have obstructed the roadways. Marchers who may have joined the march after the City turned the crowd around at Michigan Avenue may have been unaware of any orders from police and thus could not have violated those orders. Thus, even though it is a low hurdle, the Court finds that the City has not satisfied the commonality requirement in this case.

And even if there were questions common to the entire class of defendants, individual issues would no doubt predominate. Members of the putative class engaged in different conduct and would have different defenses to the City's counterclaim. Resolution of that counterclaim would degenerate into separate trials to determine – at least as a threshold matter – whether each individual plaintiff committed any violations of law (or was ever even a part of the march). Accordingly, the Court also finds that the City has not satisfied the predominance requirement in this case.

---

[1]Accordingly, certification of a class would allow for the possibility that completely innocent bystanders might wind up liable for a portion of any judgment against the class on the City's counterclaim. That possibility alone weighs heavily against class certification here.

**Conclusion and Order**

Wherefore, the City's Motion for Class Certification of its Counterclaim Against Class Plaintiffs/Counter-Defendants is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 10, 2008