# EXHIBIT A

**Expert Opinion of Anthony Bouza**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN VODAK, et al., individually and on behalf of others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | No. 03 C 2463 |
| vs. ) ) | Judge Virginia KENDALL |
| CITY OF CHICAGO, et al., ) ) ) | Magistrate Judge Nan NOLAN |
| Defendants. ) | Jury Demand |

## EXPERT OPINION OF ANTHONY V. BOUZA

**Qualifications, including any Publications**

I, Anthony V. Bouza, am qualified as an expert in the field of law enforcement and crowd control based on my over 50 years of experience, beginning as a patrol officer with the New York City Police Department in 1953. I rose through the ranks and was in command of all police forces in the Bronx from 1973 through 1976. In 1976, I was appointed Deputy Chief of the New York Transit Police Department. In 1980, I became Chief of Police in the City of Minneapolis, Minnesota, a position I held for almost nine years until I retired. I have taught college courses in the field as a professor of criminal justice at John Jay College of Criminal Justice in New York City as well as Hamline University in Minnesota. I have guest lectured at many universities and colleges and authored scores of articles on police management, legal, policy and related issues in a wide variety of national publications. I have authored eight books on topics of law enforcement, police administration and criminal justice. For additional information, see curriculum vitae attached hereto.

1



### Compensation to be Paid

I, Anthony Bouza, bill at a rate of $200 per hour for all work including the review of documents in preparation for testimony, depositions and court/trial testimony.

### Statement of all Opinions to be Expressed and Basis and Reasons Therefor

In the case of Vodak, et al. v. City of Chicago, et al. concerning the police actions on the evening of March 20, 2003, I, Anthony V. Bouza, hold the following opinions to a reasonable degree of professional certainty:

1) The actions of Defendant Chicago police officials in surrounding the crowd by establishing police lines to the east and west of the crowd at Chicago Avenue between Michigan Avenue and Mies Van Der Rohe Way was unreasonable and violated clearly established standards of law enforcement conduct.

    a) A crowd of demonstrators attempting to march in the streets is exercising First Amendment rights and Chicago police officials appropriately handled the challenges until the crowd reached the detainment area on Chicago Avenue at Michigan.

    b) Chicago police possessed no reasonable basis to surround, contain or detain the crowd.

    c) Leaving individual members of the crowd with no route of exit created a situation likely to cause panic.

It is clear from testimony of the Plaintiffs and witnesses at the class certification hearing, the videos taken by witnesses and the Chicago Police Department, the affidavits submitted by 250 people trapped in the crowd at Chicago Avenue, as well as the assertions in the police supplementary report, admissions made by the City, and members of the chain of Chicago Police command on March 20, 2003 (Superintendent Cline, Deputy Chief Risley, Commander Griffin and Commander Williams) that the Chicago Police Department established police lines to the west and east of the crowd which prevented people from leaving the area.

2

Reviewing the relevant materials and videos, I have not been able to identify any basis to surround the crowd and penning the crowd in created a serious danger to the public safety and freedom.

2) Defendant Chicago police officials had no reasonable suspicion or probable cause to detain all individuals within the crowd.

> a) No reasonable police official could believe that a person=s mere presence on the street would justify his or her arrest without first issuing a warning or providing an opportunity to leave.
>
> b) No reasonable police official could believe the lack of permit justified arrests of everyone in crowd without first issuing a warning or providing an opportunity to leave.
>
> c) The actions of the Chicago police officials in failing to charge and/or prosecute all those seized on Chicago Avenue supports the conclusion that no reasonable suspicion or probable cause existed for the seizures in the first place.
>
> d) The subsequent release of hundreds of individuals from police stations without placing charges against them who were transported from the scene further supports the conclusion that no reasonable suspicion or probable cause existed to justify the initial seizures on the street.
>
> e) Defendant police officials failure and inability to provide prosecutors with evidence of the elements of the charged offenses resulting in the ultimate dismissal en masse of the reckless conduct charges further supports the conclusion that no reasonable suspicion or probable cause existed to justify the initial seizures on the street.
>
> f) The failure of actual arresting officers to accurately sign arrest reports and criminal complaints against arrestees further supports the conclusion that no reasonable suspicion or probable cause existed to justify the initial seizures on the street. The falsifications provide eloquent testimony that the officers knew they were being order to make false arrests.

3

Before an arrest can be made an officer must have probable cause to believe that a specific individual committed or is about to commit a crime. Here, the Chicago Police Department had no probable cause to arrest and no reasonable suspicion to detain each of the individuals surrounded on Chicago Avenue. Without giving an order to the crowd warning the crowd surrounded at Chicago Avenue that if they did not disperse they would be arrested, they could not arrest or detain any given individual. This is supported by the fact that hundreds of individuals were released from the station that very same night without being charged, that hundreds of arrest reports did not have the proper arresting officer sign their arrest reports and complaints, and the criminal cases where charges were brought were dismissed by the State=s Attorney=s Office.

It is clear that the Chicago Police Department did not provide any orders to the entire crowd on Chicago Avenue, and they did not give mass orders to disperse or be arrested. This is supported by the testimony of the Plaintiffs and witnesses at the class certification hearing, the deposition testimony of Sharon Ambielli and Michael Galvin, and the 250 affidavits of members of the crowd that were surrounded at Chicago Avenue on March 20, 2003. All these individuals testified or swore under oath they were not given an order to disperse. This is further supported by the videos taken by witnesses and members of the Chicago Police Department that do not record a single order being given to the crowd on Chicago Avenue. This is further supported by the testimony of Superintendent Cline, Commander Griffin, and Deputy Chief Risley that they heard no such orders given, they did not give such an order themselves, and they did not direct that any such an order be given.

3) A reasonable law enforcement official would have concluded that the police line established to the west of the crowd was sufficient to meet any legitimate goal of keeping individuals off Michigan Avenue.

> a) The police line to the west of the crowd successfully kept individuals from marching on Michigan Avenue, as had a similar police line at Oak Street.
>
> b) No justification existed for setting up the police line to the east of the crowd and in fact the existence of the east line provided no reasonable or identifiable alternatives to avoid Michigan Avenue, and

4

therefore made it more difficult to keep individuals off Michigan Avenue.

See response set forth above at 1) for evidence supporting this opinion.

4) Defendant Chicago police officials dispersed demonstrators in an improper manner and failed to take adequate, appropriate or reasonable steps to assure that members of the crowd were aware that police considered their conduct illegal and if they did not cease and desist they were subject to arrest.

 a) Reasonable police practices and standards in this situation require that each individual be warned that he or she is obstructing traffic or committing some criminal offense prior to being seized by police officials.

 b) Reasonable police practices and standards in this situation require that any dispersal order must be capable of being heard by all those present.

 c) Reasonable police practices and standards in this situation require sufficient time must be provided for dispersal.

 d) Reasonable police practices and standards would require at least an attempt to communicate orders to the members of a crowd by amplified means and convey directions to march back to the federal plaza via a particular route.

 e) Individual conversations with so-called leaders does not justify the seizures of others within a crowd.

 f) Herding passers by and non-demonstrators within the detained group demonstrates the indiscriminate sweep that occurred here.

See response set forth above at 2) for evidence supporting this opinion.

## Data or other Information Considered by Witness in Forming Opinion

In addition to my experience, training and expertise I considered the

5

following specific information provided to me:
   (Listing everything sent through 9/18/06 whether or not considered)
   *Vodak* Third Amended Complaint (Current and pending complaint);
   Transcript of Plaintiffs= testimony in *Vodak* Class Certification Hearing;
   *Vodak* Pleadings summarizing the parties= respective positions subsequent to
      Class Certification Hearing (Plaintiffs= Closing Argument & Reply,
      Defendants= Post-Hearing Brief and Reply);
   Chicago Police Department Sample 3/20/03 Arrest Reports (Female-Nora
      McComiskey; Male-Brad Thomson);
   CPD Case Supplementary Report concerning incident of 3/20/03 (Completed
      4/1/03);
   Deposition of Superintendent Philip Cline, formerly Acting Deputy
      Superintendent of Investigative Services, taken in *Vodak*;
   Deposition of Eighteenth District Commander Joseph Griffin, commander of
      district in which arrests were made on 3/20/03, taken in *Vodak*;
   Deposition of Deputy Chief John Risley, formerly First District Commander,
      commander of district where demonstration commenced on 3/20/03,
      taken in *Vodak*;
   Article, dated 4/1/03, from <u>Reader</u> newspaper concerning events of 3/20/03;
   Report of James Pugel, dated May 31, 2005;
   Police Tape 003949
      Video Officer C. Melhart #15527 (Approximately 1 hour);
   Police Tape 003950
      Video Officer K. Williams #13590 (Approximately 40 minutes);
   Collette Morrow Best Shots (Edited)(Approximately 10 minutes);
   Chicago & Michigan tape
      Video taped also by Collette Morrow (Approximately 55 minutes);
   Commander James Maurer deposition transcript;
   Chicago Police General Order 96-2 Mass Arrest Procedures, effective date
      November 2002;
   Declaration of Anthony Bouza regarding LAPD;
   Complaint in Beal v. City of Chicago, 04 C 2039;
   Plaintiff Sharon Ambielli deposition transcript;
   Plaintiff Eric Peters deposition transcript;
   Class member Michael Galvan deposition transcript;
   Complaint Register #288535;
   D.C. Draft Report on Metropolitan Police Department=s Policy and Practice

6

in Handling Demonstrations;
Plaintiffs= Requests for Admissions to Defendants;
Order granting class certification, Judge Virginia Kendall, dated 4/17/06;
Decision in *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006);
*Vodak* Defendants= Supplement to Expert Witness Disclosure, Pugel 7/5/06;
*Chicago Sun-Times* newspaper article, 6/20/03, VODAK/CITY 020735;
Exhibit A to class certification hearing in *Vodak*, Listing of and sample affidavits of class members and putative class members provided at the Class Certification hearing.

## Listing of Other Cases In Which the Expert Witness has Testified

Anthony V. Bouza may have testified at trial or deposition in the following cases within the preceding four years:

2001 *Brandon v. Maywood, IL*
Northern District of Illinois, 99 C 6100; settled, early 2002.

*Rhonda J. Johnson v. David J. Turek, Vill. of Canturia, WI*
Attorney Susan M. Holden, Marquette Avenue, Minneapolis, MN; 612-336-4500; settled 2001.

*Zick & Beglend v. City of Maplewood, MN*
Attorney John Borger, 612-766-7501.

2002 *Cline v. Costello, Clay County, MN*
Attorney Nock May, 80 South 8th Street, Minneapolis, MN; 612-338-1919.

*Mikkelson v. Melander, et al. and City of Superior, WI*
Atty David Mallan, Duluth, MN. 218-722-4190.

*Dave Raneca for Deanna Troia v. School, Superior, WI*
Attorney William J. Schmitz, 800 Marquette Avenue, Minneapolis, MN; 612-333-9754.

2003 *Larson v. American Live, et al.*
Attorney Steven L. Kirsch, 444 Cedar St., St. Paul, MN 55410.

7

*ILWU Local 10 v. City of Oakland, CA*
Attorney Rachel Lederman, 558 Capp Street, San Francisco, CA; 415-282-9300.

*Jones v. Stoneking and Cass County, MN*
Civ. No. 02B4131 (JNE/RLE).

*Sippel v. City of Red Wing, et al.*
Attorney David Wething, 4200 County Toad 42 West, Savage, MN; 952-894-6400.

*Powers, Fabbrini v. Byrd, et al and Siskiyou County, CA*
Attorney Tania Rose, 240 Stockton Street, San Francisco, CA; 415-956-1360.

*Brame v. City of Tacoma, WA*
Attorney Jill Haavig Stone, 1501 Market Street, Suite 300, Tacoma, WA; 253-572-5324.

2004 *Arndt v. Doe, et al and City of Minneapolis, MN*
Attorney Peter Nickitas, 301 4th Avenue, South, Minneapolis, MN; 612-339-1453.

*Anderson v. Doe, et al and City of Minneapolis, MN*
Attorney Peter Nickitas, 301 4th Avenue, South, Minneapolis, MN; 612-339-1453.

*McCray, et al., v. Minneapolis P.D., et al.*
Attorney William Goodman, 740 Broadway, New York City, NY; 212-353-9587.

2005 *Lundberg, et al. v. County of Humboldt, et al.*
No. C97-3986-SI, Northern District of California.

*Bari, et al. v. Held, et al.*
No. C-91-1057-BFL, Northern District of California.

*Leeney v. Bird*

8

Attorney Tanya Rose 415/986-1338.

*Rena Saice, et al. v. Minneapolis P.D., et al.*
Attorney Daniel Guerrero, 1616 Park Avenue, South, Minneapolis, MN; 612-339-9121.

*Thos. Matthews v. Duluth P.O. Wilson*
Attorney Matthew Begeske, 301 West 1st Street, Duluth, MN; 218-726-1175.

*Washburn v. Fagen*
San Francisco, CA; Attorney Dennis Cunningham 415-285-8091

2006 *Hobley & Orange, etc. v. Burge, et al.*
03 C 3678.

*Evans v. City of Chicago, et al.*
04 C 3570

*Ollins v. O'Brien, et al.*
03 C 5798

*King*
Attorney Ryan Viettleson, 612-333-9548

## Modification of Opinion

Anthony V. Bouza reserves the right to modify these findings and opinions as additional details, evidence or material become available to me or to supplement these findings and opinions as appropriate.

*[signature]*
ANTHONY V. BOUZA
3810 Sheridan Avenue South
Minneapolis, MN 55410

Dated: September 21, 2006

9

Anthony V. Bouza
3810 Sheridan Avenue South
Minneapolis, Minnesota 55410

CURRICULUM VITAE

SS #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
Born in Spain on 10-4-28
Married, two sons ('60 and '64)
Naturalized U.S. Citizen

## EMPLOYMENT

<u>Present</u> - Writing, speaking, Expert Witness; Consulting.

<u>1997</u> - Co-host, "Face to Face", PBS T.V.

<u>02/18/91</u> - President, Center to Prevent Handgun Violence, Washington, D.C.

<u>09/01/89 - 02/15/91</u> - Gaming Commissioner, State of Minnesota.

<u>12/31/88 - 08/31/89</u> - Wrote book; Columnist for Tribune; Crime expert for KSTP-TV; Consultant; Expert Witness; Speaker.

<u>02/11/80 - 12/31/88</u> - Chief of Police, Minneapolis, Minnesota. Retired.

<u>09/79 - 01/80</u> - Adjunct Professor, John Jay College of Criminal Justice, 444 West 56th Street, New York City, New York.

<u>11/76 - 09/79</u> - Deputy Chief, Transit Police Department. Second in command of police force of 3,000 employees. Responsible for daily operations.

<u>1953 - 1976</u> - NEW YORK CITY POLICE DEPARTMENT - Began as a patrolman and rose through the ranks to command all Bronx forces from 1973 to 1976. Patrol, investigative, supervisory, intelligence, planning and related assignments. Worked in precincts and detective units. Commanded Planning, Communications, Harlem's 6th Division and the Inspections Division as well as others.

Broad grasp of all facets of a large, complex police operation, in the field or headquarters. Preparation of analyses; budgets; speeches; reports; orders and articles. Worked on labor relations; with the press; on all manner of personnel issues and organizational questions; legal issues and crime and delinquency problems. Worked on 911; Computer Assisted Dispatch; deployment strategies; community relations programs. Served on many review boards and evaluative bodies. Participated in such media projects as "The Police Tapes", "The Fire Next Door", "Police Chiefs" (90) and served as expert witness on a variety of issues.

<u>1946 - 1950</u> - Various jobs in garment center and factories. Shipping clerk, packer, salesman, machine operator, etc.

## MILITARY

<u>1950 - 1952</u> - U.S. Army, Honorably Discharged as a Corporal.

## EDUCATIONAL

Baruch School - CCNY - MPA - 1968.

Baruch School - CCNY - BBA cum laude - 1965.

Adjunct Professor:      Hamline University - 1985.
                          John Jay College of Criminal Justice - 1979-80

Wide variety of courses in management, education and related topics, at local and federal levels. Guest lectured at many universities and colleges.

Graduated Federal Executive Institute - 1973.

## PUBLICATIONS

BOOKS:      "Police Unbound; Corruption, Abuse and Heroism by the Boys in Blue"
            300 pp. Prometheus Books - Amherst, N.Y. (2001).

            "The Decline and Fall of the American Empire", (Plenum Pub. NYC - 1996).

            "How to Stop Crime", (Plenum Pub. NYC - 1996).

"A Carpet of Blue: An Ex-Cop Takes a Tough Look At America's Drug Problem" (Deaconess Press, Mpls. 1992).

"The Police Mystique" 280 pp. Plenum Publishing, 233 Spring St., New York City (1990).

"Bronx Beat" 163 pp. University of Illinois at Chicago Circle, Office of International Criminal Justice, Chicago (1990).

"Police Administration, Organization and Performance, 348 pp. Pergamon Press, Elmsford, New York (1978).

"Police Intelligence" 192 pp. AMS Press, 56 East 13th St., New York City (1976).

MONOGRAPH: "Cops, the Ghetto and the System" MTI Teleprograms, Inc., Chicago, Illinois (1979).

REPORT: "Gambling In Minnesota" 214 pp. Minnesota Department of Gaming (1990).

PLAY: "Amanuensis" 1 Act. Produced by Great American History Theater (1990).

### ARTICLES

"Police Unions: Paper Tigers or Roaring Lions" 40 pp. in book "Police Leadership in America: Crisis and Opportunity." ABF and Praeger, New York City (1985). Sidebars on reforms in ICMA book on policing (1991).

Scores of articles on police management, legal, policy and related issues, in a wide variety of national publications.

Editorial Consultant for the Journal of Police Science and Administration, IACP, Gaithersburg, Maryland, 1970 – 1988.

### ORGANIZATIONS

Beta Gamma Sigma.

Served as chair of Bronx Frontier (sought to green the ghetto with gardens) and of the Crime Control Institute (1984 – 1988).

Started program now pursued by Bronx River Restoration Project.

Served on many boards and bodies – YMCA; Minnesota Opera; Boy Scouts, Center to Prevent Handgun Violence.

Served on National Research Council's Law and Criminal Justice Committee 1984 – 1989.

### LANGUAGES

Spanish (fluent)

### AWARDS

Winner of 1976 Public Service Award – Fund for the City of New York.

Other awards, honors, plaques and distinctions from community groups, public service organizations, civic and cultural agencies, etc.